(Decided 11th March, 1875.)

---

JAMES A. MYERS, JACOB MYERS and GEORGE P. KANE *vs.* ADELINE E. KING, by her next friend, JOHN KING.

*Validity of Agreements between Husband and Wife—Standard of proof in such cases. Burden of proof—Invalid Gift from Husband to Wife—Question which the Jury is incompetent to decide.*

Where articles of household furniture were purchased by a husband in pursuance of an antecedent agreement with his wife, that he should advance

the money, and she would reimburse him, which she afterwards did, it was. HELD:

1st. That agreements of this kind between husband and wife, when the latter has a separate estate, are valid and binding upon both parties; and if *bona fide*, and consummated, the property purchased by such agency becomes the goods of the wife.

2nd. That no higher standard of proof of such agreements is required than in other civil cases; a preponderance of evidence being all that is necessary.

3rd. That in an action by the wife to recover damages for the illegal seizure and sale of said articles of furniture, under an execution against her husband, the burden of proof was on her to show that they were her separate property when so seized and sold.

A gift from a husband, who is insolvent, to his wife, is in prejudice of the rights of his subsisting creditors, and the wife can acquire no valid title to the same.

What is a "legal transfer" of property is a question of law which a jury is incompetent to decide.

APPEAL from the Court of Common Pleas.

The facts of the case are stated in the opinion of the Court. The appellant Kane was the sheriff by whom the writ of *fieri facias*, referred to in the case was executed. The appeal was taken from the action of the Court below, (GAREY, J.,) in refusing all the prayers of the defendants and granting certain instructions of its own. These prayers and instructions are substantially set forth in the opinion of this Court; and their insertion in full is deemed unnecessary to the elucidation of the questions presented.

The cause was submitted to BARTOL, C. J., BOWIE, STEWART, MILLER and ALVEY, J.

*J. Douglas Hambleton* and *Wm. J. O'Brien*, for the appellants.

*Luther M. Reynolds*, for the appellee

Bowie, J., delivered the opinion of the Court.

The appellants, James A. Myers and Jacob Myers, having obtained a judgment, in the Baltimore City Court, against Wm. H. King, the husband of the appellee, sued out thereon, a writ of *fieri facias*, by virtue of which, certain articles of household furniture, found in the dwelling house of King and wife, (and claimed by the latter to be her separate property) were seized, and sold.

The appellee, thereupon sued the appellants in trespass, for breaking and entering her mansion, and wrongfully taking and carrying away her goods, and converting them to their own use. The defendants, (now appellants) pleaded they "did not commit the wrongs alleged." At the trial, the appellee being sworn on her own behalf, testified that in the years 1869 and 1870, she received from Dr. Sharp, $500, in two separate payments, for her interest in a farm lying in Kent County; during the same time, she received from her husband $500, for a brother's interest in said farm, which her husband had previously bought for $105, for her use and benefit, and her husband paid it to her, as the proceeds of the share of her brother, which her husband bought for her in 1861.

The furniture was bought and in their possession in the spring of 1868, or during that year; she would go with her husband and look at and select the furniture, from time to time; he would pay for it according to the requirements of the sellers, before they would send it to their house; the money he paid, was not part of the money she received from Dr. Sharp or from her husband, "as she had not got her money then." She told her husband, to get and pay for the furniture, and she would pay him back, out of the money she was to receive from the sale of the farm. After she got the money, she paid her husband all she owed him, as she had agreed to do, before the sheriff seized it.

The appellee further testified, that she contributed to the household expenses; bought the best part of her own

clothing ; and that she owned the house she lived in, which was given her by her husband.

On cross-examination, she deposed, that she had no property but the furniture mentioned here, and the house she lived in ; the other rooms were furnished but the furniture belonged to her husband. The furniture bills except for the piano, were made out in Mr. King's name. The piano she paid for in two instalments.

Wm. H. King, the appellee's husband, being sworn on her behalf, testified, that he received money from Mr. Sharp ; it came from the first payment, it was binding money, and he *returned* it to his wife. That he lived in Caroline Street in '64, '68 and '69, there was no furniture in the parlor ; it was put there after the sale of the farm; they bought the furniture together, laid it out together; she paid him back, " he bought all by her authority, wardrobe, hall set, and extension table ; I paid for them then because I was sure of my money," etc.

Being cross-examined, Mr. King deposed that in 1864, 1869 and 1870, he was a carpenter ; and he was building four houses which cost him about $2400 each ; paid some of his hands on Saturday night, got about $1500 from E. B. Hunting, who was making the advances; can't say how long it was between the time he bought the furniture, and the time he was paid therefor by his wife ; that he is insolvent, was then, and had been for years ; that he had no papers or memoranda connected with this money of his wife's.

Several other witnesses being examined and the testimony closed, the defendants submitted a series of prayers, (founded, as will appear, upon the testimony of the appellee and her husband chiefly,) with the view of eliciting from the Court, a declaration of the law, as to the sufficiency of the facts, if proved, to establish the plaintiff's right of property in the furniture and as a necessary consequence, her right of action for damages.

The appellants' first prayer condensed, substantially declares, that if the jury believe from the evidence, that Wm. H. King, purchased the several articles of furniture, and the same were sold to him on his credit, and taken possession of by him, and said goods remained in his possession, until the same were removed by the defendant under the *fi. fa.* if they should find such levy and removal, then the plaintiff is not entitled to any damages for *the taking* and conversion of said goods.

The appellants' second prayer, refers to the weight of evidence necessary to support the plaintiff's claim, that the jury must be satisfied by clear and satisfactory proof, that the articles mentioned in the foregoing prayer, were paid for by the moneys of the plaintiff, and by no one else, and that a mere preponderance of proof in her favor, is insufficient as against the creditors of her husband, who became such after the furniture came to his possession.

The appellants' third prayer, affirms that if the jury find from the evidence that Wm. H. King, was at any time owner of the goods in controversy, the appellee could not acquire title to the same by any payments she might have made to him on account of said goods, and unless they find that her husband made a legal transfer of the same to the appellee, their verdict must be for the defendants.

The fourth prayer of the appellants affirms that if the husband was insolvent, at the time he gave the appellee the sum of $500, and the same was included in the sum of $1000, spoken of by her and claimed as her separate property, they must find the said $500, to be the money of her husband.

The appellants' prayers were rejected and in lieu thereof the Court gave instructions to the effect following :

1st. That the burden of proof is on the plaintiff, to show that the furniture, alleged to be taken by the defendants, was her separate property, when seized and sold under the *fieri facias.*

2nd. That unless the jury find that the property claimed by the plaintiff, was paid for by her money, they must find it was her husband's property.

3rd. The jury must consider all the facts and circumstances in evidence, to determine whether or not the furniture bought by the husband, was bought by him as agent of the wife and paid for by her money, before they can find for her as to the property bought by him.

4th. If the jury shall find the furniture was purchased by her husband, and taken into possession by him as his own property, the fact that the wife contributed to pay for the same or paid for the whole, does not make it her property.

The appellants' first prayer involved the question of the title and possession of the property seized and taken under the execution.

It affirmed, that if the property was sold to Wm. H. King, the husband of the appellee, on his credit, and taken possession of by him, and remained in his possession until removed by the appellee under the *fieri facias*, the appellee was not entitled to damages.

This proposition is based on a hypothesis of facts which entirely excludes the evidence of the agency of the husband, who testifies that he purchased the articles in pursuance of an antecedent agreement with his wife, that he should advance the money, and she would reimburse him ; which she afterwards did.

Agreements of this kind between husband and wife, where the latter has a separate estate, are valid and binding upon both parties ; and if *bona fide*, and consummated, the property purchased by such agency, becomes the goods of the *féme covert.*

The appellants' second prayer, was properly rejected, because it proposed to require a higher standard of proof, than is required in civil cases, a preponderance of evidence being all that is necessary.

The appellants' third prayer, proposed to submit to the jury a question of law ; *i. e.,* whether the husband made a legal transfer to his wife, which the jury were incompetent to decide.

The fourth prayer of the appellants we think should have been granted.

If the husband was insolvent, when he gave the sum of $500 to the plaintiff, the gift was in prejudice of the rights of his subsisting creditors, and the wife could acquire no valid title to the same.

The prayers granted by the Court in lieu of those offered by the appellants were properly granted, but the Court below being in error, in rejecting the appellants' fourth prayer, the judgment must be reversed.

*Judgment reversed, and*
*new trial ordered.*

(Decided 11th March, 1875 )